FILED

02/24/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0338

DA 24-0338

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 36N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CURTIS P. BUNSE,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Fifth Judicial District,
In and For the County of Jefferson, Cause No. DC-2024-01
Honorable Luke Berger, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      James Park Taylor, Attorney at Law, Missoula, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Selene Koepke, Assistant Attorney General, Helena, Montana

      Steve Haddon, Jefferson County Attorney, Andrew Paul, Deputy County Attorney, Boulder, Montana

Submitted on Briefs:  February 4, 2026

Decided:  February 24, 2026

Filed:

_____
Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Curtis P. Bunse appeals from his bench-trial conviction in the Fifth Judicial District Court, Jefferson County, for Criminal Possession of Dangerous Drugs in violation of § 45-9-102, MCA.  The sole issue on appeal is whether the evidence was sufficient to support the conviction.

¶3     We review a claim challenging the sufficiency of the evidence in a criminal case de novo.  *State v. Bennett*, 2022 MT 73, ¶ 7, 408 Mont. 209, 507 P.3d 1154; *State v. Kirn*, 2012 MT 69, ¶ 10, 364 Mont. 356, 274 P.3d 746.  The relevant inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *State v. Booth*, 2012 MT 40, ¶ 7, 364 Mont. 190, 272 P.3d 89; *State v. Polak*, 2018 MT 174, ¶ 34, 392 Mont. 90, 422 P.3d 112.  This standard applies equally to bench trials.  *State v. Fish*, 2009 MT 47, ¶¶ 12, 27, 349 Mont. 286, 204 P.3d 681.  We do not substitute the trial court's evaluation of the evidence but defer to its evaluation of witness credibility, as those determinations are the province of the fact-finder.  *Fish*, ¶ 29.

¶4     The evidence at trial established that on December 13, 2023, Bunse's Probation and Parole Officer, McKenzie Lyons, conducted a home visit at a residence in Boulder,

Montana, where Bunse was residing after completing a sanction at the START program. The residence contained three bedrooms. One was identified as belonging to the homeowner, Brenda Smith. The second bedroom appeared to be used as a storage room with no one staying in it. In the third bedroom, Officer Lyons observed a bed, male clothing, men's toiletries, a half-empty box of beer, and a diabetic testing kit. Lyons was aware that Bunse was diabetic. In plain view on a piece of furniture in that room, Lyons observed a glass pipe commonly used to smoke methamphetamine and a plastic baggie containing a crystalline substance. Law enforcement collected the items, and testing confirmed the substance was methamphetamine.

¶5     Officer Lyons testified that, after she entered the residence, she asked Bunse which bedroom was his, and Bunse indicated he stayed "between" the two remaining rooms. After the contraband was discovered, Bunse gave varying accounts of where he was staying, at different times asserting that he slept on the couch and later that he was staying in the basement. The day after the search, Bunse submitted to a urinalysis that tested positive for methamphetamine and amphetamine; confirmatory testing by the Montana State Crime Lab corroborated the result.

¶6     At trial, Officer Lyons testified that, when she asked Bunse where he was staying in Smith's home, "he pointed to the remainder of the two bedrooms. He pointed to both of them and says he stays between here and there, between both of them." One of the two bedrooms to which Officer Lyons testified Bunse pointed was the bedroom where the methamphetamine was found. Smith testified that Bunse had been sleeping on the couch and that the bedroom in which the methamphetamine was found had previously been

padlocked, though she stated she removed the padlock a few hours before Officer Lyons arrived for the probationary home check, making the room accessible before, and at the time of, the visit. Bunse likewise testified that he was not staying in that bedroom and denied knowingly possessing methamphetamine. The District Court found Bunse's explanations lacked credibility in light of his shifting statements and the circumstantial evidence found in the bedroom. Although the court stated it did not believe Smith testified untruthfully, it concluded that, considering the totality of the evidence, the State had proved beyond a reasonable doubt that Bunse knowingly possessed the methamphetamine.

¶7 On appeal, Bunse argues that the State's case was legally insufficient because it relied on circumstantial evidence and because the District Court's findings were internally inconsistent. He contends that once the court stated it did not believe Smith testified untruthfully, it could not reject her testimony that he was sleeping on the couch and lacked access to the bedroom. He further argues that the positive urinalysis and the absence of fingerprint or DNA testing render the evidence insufficient as a matter of law.

¶8 Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could find the essential elements of knowing possession beyond a reasonable doubt. The State was not required to present direct evidence of ownership or exclusive control. Circumstantial evidence may be sufficient to sustain a conviction, and the fact-finder is entitled to consider the cumulative force of that evidence. Here, the presence of personal items consistent with Bunse's use, the District Court's finding that Bunse had access to and was using the bedroom in some fashion as reflected in Officer Lyons' testimony, his shifting explanations regarding where he was staying, and his

4

confirmed positive urinalysis shortly after the discovery of methamphetamine together provide a rational basis for the District Court's conclusion.

¶9     The District Court's statement that it did not believe Smith testified untruthfully does not render its findings legally inconsistent. A fact-finder may credit portions of a witness's testimony while discounting or rejecting others, and a determination that a witness was not intentionally deceptive does not require acceptance of all inferences that witness urges. *See State v. Ferguson*, 2005 MT 343, ¶ 94, 330 Mont. 103, 126 P.3d 463. The court was entitled to consider Smith's account alongside the other circumstantial evidence and to determine whether, taken together, the State proved Bunse had dominion and control beyond a reasonable doubt. Our role is not to reweigh that evidence or substitute our judgment for that of the trial court.

¶10     Bunse also argues that the District Court misstated his testimony concerning the source of his positive urinalysis. At trial, Bunse suggested that methamphetamine residue from a bag he claimed to have discarded after leaving the START program—or residue spilled on his coat—may have resulted in the positive test. The District Court summarized that testimony as a claim that touching methamphetamine after disposing of it may have led to the positive result. Even if that summary did not capture every nuance of Bunse's explanation, the court was not required to accept his theory as credible. The sufficiency inquiry turns on whether the evidence, viewed in the light most favorable to the State, supports the elements of possession—not on whether the District Court perfectly paraphrased the defendant's alternative explanation.

¶11 The State was not required to conduct fingerprint or DNA testing to meet its burden, and the positive urinalysis was not the sole evidence of possession but part of a broader evidentiary picture. Bunse's reliance on *In re R.L.H.*, 2005 MT 177, ¶ 24, 327 Mont. 520, 116 P.3d 791, is misplaced. In that case, the presence of a dangerous drug in a person's body, standing alone, was held insufficient to prove knowing possession. Here, by contrast, the urinalysis corroborated physical evidence and testimony placing methamphetamine in plain view in a room the District Court found Bunse was using.

¶12 Considering the record as a whole and viewing the evidence in the light most favorable to the State, the evidence is legally sufficient under the governing standard.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶14 Affirmed.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON